**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
MITCHELL H. COHEN U.S. COURTHOUSE
401 Market Street
P.O. BOX 2067
CAMDEN, NJ 08101-2067

Andrew B. Altenburg, Jr.  (856) 361-2320
U.S. BANKRUPTCY JUDGE

September 24, 2019

Ms. Regina Perfetti          Mr. Adam Ripa
1205 Sedgefield Drive        Mrs. Kimerly Ripa
Mt Laurel, NJ 08054          9 Hadley Drive
                             Medford NJ 08055

FILED
JEANNE A. NAUGHTON, CLERK

SEP 24 2019

U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY_____DEPUTY

RE:   **In re Perfetti**
      **Bankr. Case No. 18-30798-ABA**

Dear Ms. Perfetti and Mr. and Mrs. Ripa,

    The court has received your briefs in support and in opposition to Ms. Perfetti's Motion for Violation of the Automatic Stay and thus the motion is ripe for adjudication. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052. Reviewing all of the documents submitted in connection with this motion, the court concludes that the Ripas violated the stay by asking for payment of rent due prior to January 22, 2019. Nevertheless, the court is hard-pressed to find anything warranting an award of damages but will afford Ms. Perfetti to convince the court otherwise.

## BACKGROUND

    Ms. Perfetti filed a chapter 13 bankruptcy case on October 19, 2018. On December 12, 2019 her case was dismissed for failure to pay the second filing fee installment. Doc. No. 34. On January 22, 2019, that order was vacated, and pursuant to section 1307 of the Bankruptcy Code, Ms. Perfetti converted her case to chapter 7. Doc. No. 51.[1] The Motion for Relief that the Ripas had filed on January 8, 2019 (Doc. No. 48) was granted in the chapter 7 case on February 5, 2019 (Doc. No. 65) over Ms. Perfetti's objection. The stay relief permitted the Ripas to institute or resume and prosecute to conclusion one or more actions in the court(s) of appropriate jurisdiction

---

[1] By agreement with the chapter 13 trustee, who had filed a Motion to Dismiss the Case for Bad Faith Filings and to Bar Future Filings for Two Years, Doc. No. 18, vacating the dismissal order was contingent on Ms. Perfetti converting her case to chapter 7 and agreeing to be barred from future filings for two years if this case is dismissed for any reason. *See* Doc. Nos. 30, 34.

and to pursue their state court remedies.[2] Ms. Perfetti filed the instant Motion for Violation of the Automatic Stay on April 24, 2019. Doc. No. 110. On May 3, 2019, Ms. Perfetti was granted a discharge of debts. Doc No. 114.

In her motion, Ms. Perfetti alleged that the Ripas willfully violated the automatic stay by asking about post- and prepetition rents due, talking to former neighbors, and fabricating statements. Doc. No. 110. Her evidence included email messages between her and Mrs. Ripa on March 8, 2017. At 12:57 p.m., Mrs. Ripa provided a breakdown of unpaid rent from August 2018 to March 2019 and stated that the postpetition rent due totaled $6,276.75. *Id.* Mrs. Ripa also asked for a forwarding address. *Id.* At 1:11 p.m., Ms. Perfetti stated that she would be out by March 15 "and the balance is being discharged in the bankruptcy." *Id.* At 1:17 p.m., she added "That would be pre and post. I've rejected the lease and the entire balance is being discharged. I'm sorry, I thought you knew this. *Id.* In any event, on or before March 15 will be completely out." *Id.* At 1:27 p.m., Mrs. Ripa replied, asking for a time on March 15th to come and get the keys and inspect the condo together. *Id.* She also stated that "[o]nly the pre-petition amount is able to be discharged by bankruptcy[,] not the post petition, so that is the amount due since your original filing." *Id.* Ms. Perfetti replied that same day at 1:31 p.m. that she had converted to chapter 7 and that "[a]ll of it is discharged as of the date of conversion and rejection of the lease both pre and post."

Ms. Perfetti also attached to her motion an email exchange between her and Mr. Ripa. *Id.* She presumably asked on April 12, 2019 why the Ripas wanted her forwarding address, as Mr. Ripa replied on April 13, 2019 "For anything we need to contact you about. For example, you still owe us a bit over 6k in post petition rent." *Id.* On April 13, 2019, Ms. Perfetti replied "There is nothing to contact me about. The rent is discharged and if you continue to pursue it, I will have to file a motion for contempt again. I am no longer in NJ so please cease and desist from contacting me. I am still in an active bankruptcy." *Id.*

Mr. Ripa replied on April 17, 2019 at 10:04 a.m., stating "If that is the case that the Pre and Post-petition rents are discharged I'm sure you have some documentation that shows that fact. Please provide this documentation and we won't pursue it." *Id.* Ms. Perfetti replied that day at 10:43 a.m.:

> The stay relief that was granted was for POSSESSION only. Once a case is converted any new debt incurred is considered as if it occurred pre-petition not to mention the fact the lease was REJECTED and I vacated the premises but its not my job to explain this to you. I've told you BEFORE to see 11 U.S.C. section 348(d). There is no notice required to voluntarirly [sic] convert a case. With that being said, I will ask you for the last time to stop contacting me, otherwise, [sic] I will be forced to file a motion for violating federal law. Please leave me alone[.]

*Id.* (Capitals in original.) The Ripas stated in court, and Ms. Perfetti did not object, that after this exchange the Ripas did not ask about the postpetition rent again.

---

[2] The Ripas submitted a form of order meant to be used by secured creditors. While much of the order does not apply to landlords and tenants (e.g. permitting foreclosure), there is language in the order sufficient to serve the Ripas' purposes.

2

In a subsequent filing, Ms. Perfetti stated that her former neighbor informed her that the police had come to her door and that the Ripas had talked with her about the "past due rent," a "note on the door," and the "police being there." Doc. No. 119. In another filing, she added that the Ripas' contacting her after she had asked them to stop constituted a willful violation of the stay. Doc. No. 120, ¶ 5. She alleged that Mr. Ripa asking her about the status of the case was "done with the intent to harass the debtor." *Id.*, ¶ 6. In an attachment of an April 13, 2019 email message chain, she attached the Notice of Chapter 7 Bankruptcy Case that was issued in connection with her case, circling a part about creditors being prohibited from demanding repayment from debtors. *Id.*, ex. C.

The Ripas responded to Ms. Perfetti's allegations, averring that they only ever asked for her to pay postpetition rent. Doc. No. 117, ¶ 1. They characterized as a lie Ms. Perfetti's statement that the rent had been discharged, since she stated this prior to the April 26, 2019 deadline to object to discharge and the entry of the discharge order on May 5, 2019. *Id.*, ¶ 2. They stated that the only time they contacted Ms. Perfetti after she asked them on April 13th to stop was when they responded to her April 23, 2019 email message. *Id.*, ¶ 3. They also state that her neighbor approached Mr. Ripa when he was changing the lock on the premises. *Id.*, ¶ 4.

The Ripas further responded that Ms. Perfetti did not return the apartment keys until March 14 and the mailbox keys until March 19, 2019. Doc. No. 121, ¶ 1. Mr. Ripa stated that he had asked Ms. Perfetti's neighbor, who had told him that Ms. Perfetti had planned to skip out on rent, for her name and number, to contact her about so testifying, but this was in connection with collecting the rent he believed was his right to collect. *Id.* The note on the door referenced by Ms. Perfetti likely was the Warrant of Removal posted by the police in connection with the eviction action. *Id.* The Ripas never called the police. *Id.* They also alleged that Ms. Perfetti redacted a line in the email chain where she had stated "I'm confused but don't really care." *Id.* Regarding Mr. Ripa asking Ms. Perfetti about the status of the case, Mr. Ripa reiterated that he was asking about her claim that the postpetition rent was already discharged. *Id.*, ¶ 2.

Analysis

Stay Violation

Ms. Perfetti asserts three bases for the Ripas' violation of the automatic stay: asking for payment of postpetition rent, talking with her neighbor, and contacting her after she asked them not to. The court finds that only the first base constitutes a stay violation.

Though Ms. Perfetti does not cite to the particular Bankruptcy Code section she proceeds under, section 362(a)(6) provides that the filing of a bankruptcy petition operates as a stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]" 11 U.S.C. § 362(a)(6). Alternatively, she might be proceeding pursuant to section 362(a)(3), which prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

An individual injured by any willful violation of the stay may be awarded actual damages, including costs and attorneys' fees, and in appropriate circumstances, punitive damages, pursuant to section 362(k)(1). "Willful" has been interpreted as meaning that the acts that violate the stay be intentional. *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 320 (3d Cir. 2003). Damages must have a "sufficient factual foundation," be "reasonably incurred as a proximate result of the violation of the stay," and be proven "with reasonable certainty and [] not be speculative or based on conjecture." *In re Grine*, 439 B.R. 461, 469 (Bankr. N.D. Ohio 2010). Indeed, "[a]ctual damages" are awarded to reimburse the debtor for actual losses but "should be awarded only if there is concrete evidence supporting the award of a definite amount that can be ascertained with reasonable certainty." *In re Dean*, 490 B.R. 662, 668 (Bankr. M.D. Pa. 2013) (citing *In re Frankel*, 391 B.R. 266, 272 (Bankr. M.D. Pa. 2008)) The damages may not "be based on mere speculation, guess, or conjecture." *Id.* A willful violation alone, without injury or damages, does not automatically entitle a debtor to damages. *See In re Heckman*, 560 B.R. 657, 664–65 (Bankr. E.D. Pa. 2006) (holding that even if the creditor's invoices to the debtor included pre-petition amounts, and thus violated the automatic stay, the debtor failed to meet his burden of proving "with reasonable certainty that he suffered actual injury or damage as a result of [the creditor's] mailing of the bills."). Generally, pro se litigations cannot recover attorney's fees as an item of actual damages in an action under § 362(k). *In re Carter*, No. AP 14-02144, 2016 WL 1704719, at *6 (B.A.P. 9th Cir. Apr. 22, 2016), aff'd, 695 F. App'x 307 (9th Cir. 2017); *see also Heckman*, 560 B.R. at 664. Finally, a movant also has a duty to mitigate actual damages. *In re Johnson*, 478 B.R. 235, 248 (Bankr. S.D. Miss. 2012).

Regarding emotional distress damages, a movant must do more than merely allege that he or she endured emotional distress. For example, in *In re Guenot*, 11-37501, 2014 WL 67320 (Bankr. D.N.J. Jan. 2, 2014), the court stated "The Debtor has not come forward with any evidence to support this allegation, such as a certification from a medical professional. Section 362(k) requires a finding of actual injury. Being 'upset' does not warrant compensation under § 362(k)." *Id.*, at *3 (footnotes omitted). *See In re Johnson*, 478 B.R. 235, 249 (Bankr. S.D. Miss. 2012) (stating that "hurt feelings do not generally necessitate an award of emotional injury damages[.]"). There must be a causal connection between the creditor's actions and the emotional distress alleged. *Dean*, 490 B.R. at 669.

Ms. Perfetti filed her chapter 13 bankruptcy case on October 19, 2018. At that time, only rent due prior to that date was subject to discharge and accordingly subject to the automatic stay. But when she converted her case to chapter 7, by operation of section 348 of the Bankruptcy Code, all rent due prior to the conversion date was deemed prepetition rent and became off limits to collection by the Ripas. 11 U.S.C. § 348(d) ("A claim against the estate or the debtor that *arises after the order for relief but before conversion* in a case that is converted under section . . . 1307 of this title . . . shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.") (emphasis supplied). Accordingly, the Ripas violated the stay by asking for payment of this rent.

The court is sympathetic to parties appearing pro se who are not familiar with the intricacies of bankruptcy law. What is more, perhaps the Ripas were confused by what the Order granting them relief from the stay allowed them to do. However, the lack of legal counsel does not insulate a party from liability for stay violations, a statute that is interpreted as creating strict liability, i.e.,

that the party need not intend to violate the stay, just intend the act that violates the stay. Asking for payment on a claim during the case violates the stay. That the Ripas did not understand that this violated the stay is not material to the court's analysis.

Regarding communication with Ms. Perfetti's neighbor, however, the court finds that Ms. Perfetti did not allege sufficient facts to support a stay violation. That the Ripas told a third party that Ms. Perfetti was evicted for failure to pay rent, with no allegation that they did so with the intent that it be repeated to Ms. Perfetti and, say, coerce her into paying the rent arrears, does not state a violation of the automatic stay. Ms. Perfetti merely alleged that it upset her and that the neighbor no longer speaks to her. Even were this a stay violation, feeling upset or embarrassed is not sufficient for an award of actual damages. Accordingly, the court finds no stay violation in connection with this allegation.

As for contacting Ms. Perfetti after she had requested the Ripas not do so, Ms. Perfetti did not explain how this violated the automatic stay. The Ripas admitted that they contacted Ms. Perfetti regarding her representation that the rent had been discharged. While the stay prohibits efforts to collect on claims that arose before the commencement of a case, it is not a gag order. Ms. Perfetti proceeds in this case pro se. As such, she is her own point-of-contact. The Ripas have an adversary proceeding against Ms. Perfetti pending—certainly she does not suggest that the Ripas are barred from communicating with her about that. Similarly, an inquiry about whether discharge had been entered without any demand for payment does not violate the stay.

### Postpetition rent after conversion

Though I have already found a stay violation, I note that Ms. Perfetti argues that the rent the Ripas wrongly sought to collect included rent that came due after she rejected her lease on February 4, 2019. She believes this rejection terminated her obligation to pay rent postpetition. But Ms. Perfetti is incorrect, as only a chapter 7 trustee can reject a lease. Instead, her obligation to pay rent after the conversion of the case continued until she fully vacated the apartment on March 15, 2019.

Section 365(d) of the Bankruptcy Code provides that in a chapter 7 case, if the trustee does not assume or reject an . . . unexpired lease of residential real property . . . of the debtor within 60 days after the order for relief, . . . then such . . . lease is deemed rejected." 11 U.S.C. § 365(d)(1). If the trustee rejects the lease, or does not timely assume it, then "the leased property is no longer property of the estate and the stay under section 362(a) is automatically terminated." 11 U.S.C. § 365(p)(1). Thus, any initial assumption or rejection of a lease is performed by the chapter 7 trustee.

A chapter 7 debtor only then has the opportunity to assume a lease. Section 365(p)(1) of the Bankruptcy Code states that if the trustee rejects or does not timely assume (thereby deeming rejected) a lease, then the leased property is no longer property of the estate and the automatic stay is terminated. 11 U.S.C. § 365(p)(1). Section 365(p)(2) of the Bankruptcy Code then provides that "[i]f the debtor in a case under chapter 7 is an individual, the debtor may notify the creditor in writing that the debtor desires to assume the lease. Upon being so notified, the creditor may, at its option, notify the debtor that it is willing to have the lease assumed by the debtor and may condition

5

such assumption on cure of any outstanding default on terms set by the contract." 11 U.S.C. § 365(p)(2). Thus, the only action a chapter 7 debtor may take regarding her lease—after the trustee has rejected the lease—is to ask her lessor to allow her to assume the lease. If so willing, the lessor can condition that lease on the debtor's curing all default. Moreover, as the lease is no longer property of the estate and the stay has been terminated as to it, the negotiations between the debtor and lessor are done outside of the bankruptcy case.

That a chapter 7 debtor cannot reject a lease is reflected by the form Ms. Perfetti utilized to attempt rejection. The instructions to Official Form 108, Statement of Intention for Individuals Filing Under Chapter 7, states that it is to be filled out by chapter 7 individual debtors that have creditors with claims secured by the debtors' property or by debtors who have leased personal property under a lease that has not yet expired. An apartment is not personal property, it is real property. Part 2 of the form, regarding unexpired personal property leases, even warns "Do not list real estate leases," and it references 11 U.S.C. § 365(p)(2).[3]

Here, since the trustee did not assume the lease, the lease was deemed rejected 60 days after the order for relief, which for purposes of cases that have been converted to chapter 7, is the date of conversion. 11 U.S.C. § 348(c). Thus, the lease was deemed rejected by the trustee 60 days after January 22, 2019, or March 25, 2019.[4] Since this is after Ms. Perfetti was evicted from the premises, the trustee never got the chance to reject the lease, and therefore rejection is not relevant here.

Had the lease been rejected, section 365(g)(1) provides that the lease would be considered a breach that occurred "immediately before the date of the filing of the petition." 11 U.S.C. § 365(g)(1). Ms. Perfetti had cited to cases discussing this provision to support her argument that the rent that accrued postpetition up until her vacating the apartment was discharged. However, section 365(g)(1) concerns damages for breach of an unexpired lease—such as the rent that would have come due had the lease not been rejected. But here neither the trustee nor Ms. Perfetti rejected the lease; Ms. Perfetti was evicted for breaching the lease by failing to pay rent prior to any rejection.

The post-conversion, pre-eviction rent instead is usually dealt with as an administrative expense claim under section 503(b)(1). That Code section provides that, "After notice and a hearing, there shall be allowed, administrative expenses . . . including—(1)(A) the actual, necessary costs and expenses of preserving the estate[.]" 11 U.S.C. § 503(b)(1)(A). "There is no question, of course, that the payment of rent for the use and occupancy of real estate ordinarily counts as an 'actual, necessary' cost to which a landlord, as a creditor, is entitled." *Zagata Fabricators, Inc. v. Superior Air Products*, 893 F.2d 624, 627 (3d Cir. 1990). "Under the objective approach, 'the lessor is entitled to collect the fair rental value of the leased premises so long as the

---

[3] It might not be improper for a debtor to indicate on this form that she would like to assume the lease (once the trustee has rejected it), but as explained, a chapter 7 debtor cannot reject a residential real property lease at all. More commonly, chapter 7 debtors here indicate their intent to assume or reject a lease of a motor vehicle.

[4] Sixty days after January 22, 2019 is March 23, 2019. Rules on what to do when a deadline falls on a weekend or legal holiday instruct that the 60 days run until the first day that is not a weekend or legal holiday, thus March 25, 2019. Fed. R. Bankr. P. 9006(a)(1).

debtor is occupying the leased property and using it to help preserve the estate' regardless of whether the property is being put to the same use as it was pre-petition." *In re Cornwall Paper Mills Co.*, 169 B.R. 844, 851 (Bankr. D.N.J. 1994) (quoting *In re F.A. Potts & Co., Inc.*, 137 B.R. 13, 17 (E.D. Pa. 1992)). "[T]he rental value fixed in the lease will control, unless there is convincing evidence that such rental rate is unreasonable." *Id.* (quoting *Potts* at 18). Because this is a no asset case, however, seeking an administrative claim would be futile, as the trustee here will not be making any payments to creditors. However, the expense claim is not discharged, thus the Ripas may pursue payment for the rent due during that period on their own, without violating either the automatic stay or the discharge injunction.

## CONCLUSION

In closing, the court finds that the Ripas violated the stay by asking Ms. Perfetti to pay rent that accrued postpetition, but by dint of Ms. Perfetti's conversion from chapter 13 to chapter 7, is treated as having accrued prepetition and thereby subject to the automatic stay. None of Ms. Perfetti's other allegations rise to stay violations.

An order has been entered consistent with this letter opinion, through which Ms. Perfetti will be provided time to certify as to her actual damages, which the court expects to be limited. Those damages might be offset by the postpetition rent that is due to the Ripas for the period from January 22, 2019 to March 14, 2019.

Very truly yours,

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge